**In the United States District Court
for the District of Kansas**

―――――――――

Case No. 25-cv-01122-TC-ADM

―――――――――

GAYLE BENITEZ,

*Plaintiff*

v.

SKYLER HINTON,

*Defendant*

―――――――――

**MEMORANDUM AND ORDER**

Plaintiff Gayle Benitez sued Harvey County Sheriff's Deputy Skyler Hinton for excessive force. Doc. 9. Hinton moves to dismiss. Doc. 13. For the following reasons, that motion is denied.

**I**

**A**

To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could

1

prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Ass'n. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

One early April morning in 2023, Plaintiff Gayle Benitez was with a friend at a Kwik Shop in Havey County, Kansas. Doc. 9 at ¶ 2.[1] Defendant Hinton, a Harvey County Sheriff's Deputy, suspected that Benitez was drunk and that she had driven drunk to the Kwik Shop. *Id.* Hinton began to question Benitez. *Id.*

Benitez explained that she had not been driving drunk. Doc. 9 at ¶ 2. She told Hinton that a man had driven her to the Kwik Shop. *Id.* Benitez's friend confirmed that a man had driven the pair to the Kwik Shop. *Id.* Benitez then asked Hinton if she was free to leave, and Hinton replied that she was not.

Benitez insisted that she was free to leave and told Hinton that she was going to walk home. Doc. 9 at ¶ 2. Hinton grabbed Benitez's arm and told her that she was not free to leave. *Id.* Benitez pulled her arm away and told Hinton to stop touching her. *Id.* He did not. Instead, Hinton twisted Benitez' left arm, flipped and twisted her body, causing her to have a violent impact with the concrete parking lot surface. *Id.* As a result, Benitez suffered a right bicep tear and a right shoulder labral tear. *Id.* Benitez has been permanently damaged, as she can no longer lift her right arm above her head, and is in daily pain and discomfort. Doc. 9 at ¶ 2.

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

Based on these facts, Benitez filed suit in federal court. Doc. 9. She brings a claim of excessive force in violation of the Fourth Amendment.[2] *Id.* at ¶¶ 13–18. Hinton moves to dismiss, arguing that he is entitled to qualified immunity and that Benitez's claim is barred by the *Heck* doctrine. Doc. 13.

## II

The facts alleged by Benitez, taken as true, show a clearly established violation of her rights under the Fourth Amendment. And Benitez's claim is not barred by the *Heck* doctrine. Accordingly, Hinton's motion is denied.

## A

Benitez's Complaint asserts constitutional violations that arise under 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023). Thus, to state a viable Section 1983 claim, a plaintiff must establish that a person, acting under color of state law, caused him or her to be deprived of a right secured by the Constitution or laws of the United States. *See Torres v. Madrid*, 592 U.S. 306, 310 (2021); *accord Medina v. Planned Parenthood of S. Atl.*, 606 U.S. 357, 365 (2025).

There are two general iterations of a Section 1983 claim. One is suing the individual officer directly. That claim is akin to suggesting that the individual officer personally participated in conduct that is alleged to have deprived the plaintiff of an enforceable right, *Cuervo v. Sorenson*, 112 F.4th 1307, 1314 (10th Cir. 2024), failed to intervene

---

[2] Benitez initially brought her claim pursuant to the Fourth, Fifth, and Fourteenth Amendments. Doc. 9 at 4. But the Fifth Amendment "applies only to action by the federal government." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). And the Fourteenth governs excessive force claims for pretrial detainees. *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*, 978 F.3d 1165, 1171 (10th Cir. 2020). Benitez clarified in her response to Hinton's motion to dismiss that she brings her claim only under the Fourth Amendment. Doc. 14 at 7.

while another engaged in unconstitutional conduct, *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022), or failed to supervise others who violated the plaintiff's rights, *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). The other is by suing either the entity responsible, whether by naming that entity directly or suing the agent of the entity in his or her official capacity. *See generally Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (applying *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *accord Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015). To assert an official-capacity claim, the plaintiff must allege both that his or her harm was caused by a constitutional violation committed by the entity's agent, *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006), and that the entity's custom, policy, or practice caused the unconstitutional conduct, *Monell*, 436 U.S. at 694–95. *See generally Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1048–49 (10th Cir. 2024).

**B**

Hinton seeks dismissal of Benetez's excessive force claim, invoking the protection of qualified immunity. Doc. 13 at 4. When a plaintiff asserts an individual-capacity claim, the defendant can assert the defense of qualified immunity. That judicially recognized doctrine attempts to balance several competing interests. Suits against government actors allow those wronged by government misconduct a method of redress. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). But non-meritorious suits exact a high cost from society and government officials by unduly interfering with the discharge of official duties. *See id.*; *see also Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277 (10th Cir. 1998). So government officials performing discretionary duties are immune from suit when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have been aware. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (recognizing municipalities may not rely on their officers' entitlement to qualified immunity). Whether an official is immune turns on the objective reasonableness of the official's actions, considering the laws clearly established at the time the official acted. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Objective reasonableness is not an exacting standard; qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *See White v. Pauly*, 580 U.S. 73, 79 (2017); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The analytical framework for the invocation of qualified immunity at the Rule 12 stage is settled. *See, e.g.*, *City of Tahlequah, Okla. v. Bond*,

595 U.S. 9, 12 (2021) (per curiam); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). First, the complaint must allege conduct that, assuming the allegations are true, violates the Constitution or laws of the United States. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Second, the law must have been clearly established at the time of the alleged conduct such that the defendant had fair notice that his or her conduct was unlawful. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). If both inquiries are answered in the affirmative, the motion to dismiss must be denied. But, if the answer to either is no, the defendant is entitled to judgment as a matter of law. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023).[3]

Discerning whether the relevant legal rule was clearly established is a narrow and context-specific exercise. *See Bond*, 595 U.S. at 12; *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). In short, the precise contours of the legal right must have been so clear that every reasonable official in that circumstance would have understood what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct in the particular situation. *See Mullenix v. Luna*, 577 U.S. 7, 13–14 (2015); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011); *see also Rivas-Villegas*, 595 U.S. at 5–8 (reversing a denial of qualified immunity where the precedent relied upon had "materially distinguishable" facts that "did not give fair notice" to the official).

Practically, this means a "Supreme Court or Tenth Circuit deci-sion" must have held that the same conduct (or very nearly the same conduct) as the conduct at issue is a violation of law. *Wise v. Caffey*, 72

---

[2] Courts have discretion to address the inquiries in any order, as courts must "think carefully before expending 'scarce judicial resources' to resolve diffi-cult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *al-Kidd*, 563 U.S. at 735 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *Kisela v. Hughes*, 584 U.S. 100, 103–04 (2018).

F.4th 1199, 1208–09 (10th Cir. 2023).[4] To be sure, a case "directly on point" is not necessary for a right to be clearly established, but existing precedent must have placed the constitutional question "beyond debate." *White*, 580 U.S. at 78–79.

The first step of qualified immunity is to determine whether there has been a constitutional violation. Benitez's claim of excessive force is governed by the Fourth Amendment. *Est. of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014); *McCoy v. Meyers*, 887 F.3d 1034, 1045 (10th Cir. 2018) (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)). "A police officer violates an arrestee's . . . Fourth Amendment right to be free from excessive force during an arrest if the officer's actions were not 'objectively reasonable' in light of the facts and circumstances confronting him." *McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019) (citing *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1213 (10th Cir. 2019)).

Reasonableness is a product of both "the nature and quality of the intrusion" and "the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). *Graham* identified several factors to aid in that inquiry, including "the severity of the crime at issue," "whether the suspect poses an immediate threat to the safety of the officers or others," and "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* But, because officers are often forced to make "split-second judgments" under "stressful and dangerous conditions," the standard is never one of 20/20 hindsight and is always directed towards objective reasonableness considering the circumstances at the time of the conduct as they would have appeared to a reasonable officer. *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001). Courts must look at the totality of the circumstances, including, not just at the precise moment of the use of force, for

---

[4] The Supreme Court has never held that circuit precedent may be a dispositive source of clearly established law, opting instead to assume without deciding that it might. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (citing *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 614 (2015)), which cited *Carroll v. Carman*, 574 U.S. 13, 17 (2014), which, in turn, cited *Reichle*, 566 U.S. at 665–66)); *see also Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy."). But the Tenth Circuit has, holding that a right "is clearly established when a Supreme Court or Tenth Circuit precedent is on point or the alleged right is clearly established from case law in other circuits." *Stepp v. Lockhart*, 168 F.4th 1286, 1301 (10th Cir 2026).

"earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones." *Barnes v. Felix*, 605 U.S. 73, 80 (2025).

**1**

Benitez's Complaint alleges facts that, taken as true, suggest a violation of her Fourth Amendment rights. Application of the three *Graham* factors support this conclusion. First, the seriousness of the offense cuts in favor of Benitez. Although drunk driving is a serious crime, *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 451 (1990), the Complaint alleges that Benitez was not driving drunk, or even in any vehicle, when Hinton used force to subdue her. Doc. 9 at ¶ 2. But even so, Hinton admits that the relevant drunk-driving statute classifies the crime as a misdemeanor on the low end. Doc. 13 at 7; *see Donahue v. Wihongi*, 948 F.3d 1177, 1197 (10th Cir. 2020) (noting that *Graham* favors minimal force when the crime at issue is a misdemeanor). And there is no allegation that Benitez was about to drive away. To the contrary, she alleges that she merely sought to walk home, meaning Hinton lacked a basis on which to believe Benitez was about to operate a motor vehicle. Doc. 9 at ¶ 2.

Second, Benitez did not pose a threat to Hinton or others' safety. She was unarmed and did not physically or verbally threaten Hinton. Doc. 9 at ¶ 2. And Hinton was grabbing Benitez—who weighs 110 pounds—by her arms, which suggests that he sought and then obtained physical control over her. There are no alleged facts suggesting that Benitez posed an immediate threat to Hinton or anyone else. *See Surat v. Klamser*, 52 F.4th 1261, 1275 (10th Cir. 2022) (finding that there was no immediate threat where the officer was grabbing the defendant by her wrist, she was unarmed, and she was much smaller than the officer).

Third, Benitez exhibited only minimal resistance. When Hinton grabbed her harm, she "attempted to pull away." Doc. 9 at ¶ 2. To be sure, this entitled Hinton to use "some" force. *Hooks v. Atoki*, 983 F.3d 1193, 1201 (10th Cir. 2020). But "the use of the takedown maneuver to slam to the ground a nonviolent misdemeanant who poses no immediate threat to the officer or others based on *minimal resistance* to arrest is unreasonable and constitutes excessive force under the Fourth Amendment." *Surat*, 52 F.4th at 1276 (emphasis added). The facts alleged by Benitez, which must be accepted as true at this stage, suggest that her resistance was minimal at most, which does not justify a violent takedown maneuver. And in contrast, the force used—slamming

her to the ground and causing structural and permanent injuries—was disproportional to the threat Benetiz posed. *Krueger v. Phillips*, 154 F.4th 1164, 1196 (10th Cir. 2025) (affirming denial of qualified immunity and noting that courts must ask "whether the force used is proportional to the suspect's crime") (brackets and quotation marks omitted).

**2**

Benitez has also carried her burden of showing that the violation described above was clearly established. The Tenth Circuit has held that "it is clearly established that an officer uses excessive force when he executes a forceful takedown of a subject who at most was a misdemeanant, but otherwise posed no threat and did not resist arrest or flee." *Myers v. Brewer*, 773 F. App'x 1032, 1038 (10th Cir. 2019) (citing *Morris v. Noe*, 672 F.3d 1185, 1198 (10th Cir. 2012)); *see also Casey v. City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) ("*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest.").

Hinton disputes the clarity of the law in the Tenth Circuit, invoking an unpublished Sixth Circuit decision that he contends recognizes the law was not clear. Doc. 13 at 9 (citing *Parsons v. City of Ann Arbor, Michigan*, No. 22-1338, 2023 WL 3413898 (6th Cir. May 12, 2023)). Hinton is correct that case law from other circuits can have relevance in the clearly established analysis, *Stepp*, 168 F.4th at 1301, but *Parsons* does not cut in his favor. Not only is that decision lacking precedential value in in the Sixth Circuit, *Tanner v. Yukins*, 776 F.3d 434, 441 (6th Cir. 2015), it is factually distinguishable from the situation described in Benitez's Complaint. In *Parsons*, the officer had witnessed the plaintiff exit a bar "highly intoxicated . . . with his shirt in [ ] disarray, unbuttoned, somewhat hanging off his body." 2023 WL 3413898, at *1. The plaintiff was arguing with those around him and had punched the bar's bouncer. The officer ordered the plaintiff four times to put his hands behind his back, which the plaintiff did not do, and the officer ultimately took the plaintiff to the ground. *Id.* In other words, that plaintiff was a drunken threat to public safety.

Benetiz's allegations are to the contrary. There are no allegations in her Complaint that she was drunk (much less highly intoxicated), disheveled, or physically threatening anyone. Instead, the Complaint alleges that she merely "attempted to pull away" from Hinton and yelled at him with unsavory language when he confronted her without justification. Doc. 9 at ¶ 2. It was clearly established—in both the Sixth Circuit and Tenth Circuit—that Hinton could not forcefully take down

Benitez given those facts. *Compare Parsons*, 2023 WL 3413898, at *3 (quoting *LaPlante v. City of Battle Creek*, 30 F.4th 572, 583 (6th Cir. 2022)) ("'[The Sixth Circuit] recently articulated that 'takedown maneuvers are excessive when officers deal with a "generally compliant" suspect, and that the police may not use physical force against a subdued, non-resisting subject.'"); *with Surat*, 52 F.4th at 1275–76 (10th Cir. 2022) (concluding that officer's forceful takedown of a misdemeanant who posed a minimal safety threat and exhibited only minimal resistance violated Fourth Amendment's prohibition of unreasonable use of force).[5]

## C

Hinton also argues that Benitez's claim is barred by the *Heck* doctrine. Doc. 13 at 10. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Court held that no Section 1983 claim concerning the administration of the criminal process is permitted unless the Section 1983 plaintiff establishes that the conviction was reversed on direct appeal or otherwise declared invalid. 512 U.S. at 487 & n.5 (1994) (recognizing that this rule applies to any malicious prosecution or abuse of process claim that would imply the invalidity of a conviction). Then, building naturally off that rule, the Court held that such a claim cannot even accrue prior to the favorable termination of the plaintiff's prosecution. *McDonough v. Smith*, 588 U.S. 109, 117–18 (2019) (applying *Heck*'s rule that is motivated by a desire to avoid parallel litigation, the fear of conflicting judgments, and collateral attacks on criminal judgments through civil litigation); *see also Thompson v. Clark*, 596 U.S. 36, 49 (2022) (holding that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence," but only "that the criminal prosecution ended without a conviction.").

*Heck* does not bar Benitez's claim. *Contra* Doc. 13 at 10. "*Heck* prohibits the use of § 1983 to challenge the validity *of a prior conviction or sentence . . . .*" *Olivier v. City of Brandon, Mississippi*, 607 U.S. ___, 146 S. Ct.

---

[5] In *Surat*, the officer was entitled to qualified immunity because it was not clearly established in 2017 that forceful takedowns of minimally resisting misdemeanants violated the Fourth Amendment. 52 F.4th at 1276. Hinton is not protected by qualified immunity because *Morris* and *Surat* had clearly established the law prior to his alleged conduct. *See Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (noting that plaintiffs must show a constitutional violation in "then-extant clearly established law").

916, 920 (2026) (emphasis added). Benitez is not challenging the validity of her prior conviction but, rather, the manner in which Hinton arrested her. The Tenth Circuit has repeatedly held that a Section 1983 claim for excessive force does not necessarily call into question the validity of the plaintiff's conviction and thus is not categorically barred by *Heck*. *Torres v. Madrid*, 60 F.4th 596, 600 (10th Cir. 2023); *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999). Rather, "[t]o determine the effect of *Heck* on an excessive-force claim, the court must compare the plaintiff's allegations to the offense he committed." *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015).

Benitez was convicted of one count of interference with a law enforcement officer. Doc. 14 at 10; *see State of Kansas v. Gayle Lee Benitez*, HV-2023-CR-000125 (Harvey County District Court Nov. 6, 2023), Doc. 17. That statute makes it a crime to knowingly obstruct, resist, or oppose any person authorized by law to serve process in the execution of an official duty. Kan. Stat. Ann. § 21-5904(a)(3). There is no reason to conclude that Benitez's suit calls into question the validity of her conviction given the elements of that offense. *See Moman v. Barnhart*, 623 F. Supp. 3d 1215, 1226 (N.D. Okla. 2022) (citing *Havens*, 783 F.3d at 782) ("The *Heck* doctrine does not always bar an excessive-force claim asserted in a civil rights action by a plaintiff who has been convicted of obstruction, resisting arrest, or assaulting an officer during the course of an arrest or detention."); *see also Olivier*, 146 S. Ct. at 924 (finding that *Heck* did not bar a suit where the plaintiff did not try to "collaterally attack the old conviction") (brackets omitted).

### III

For the foregoing reasons, Hinton's Motion to Dismiss, Doc. 13, is DENIED.

It is so ordered.

Date: May 13, 2026                   s/ Toby Crouse
                                     Toby Crouse
                                     United States District Judge